# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                    Chapter 7 Bankruptcy

Robert Glen and Karen Jean Glen,
                                          Bky. File No.:      08-32860-DDO
        Debtors.                          Adv. No.:           08-3156

---

Darrell and Judy Marcusen,

        Plaintiffs,                       **NOTICE OF MOTION AND MOTION
                                          FOR SUMMARY JUDGMENT**

v.

Robert Glen and Karen Jean Glen,

        Defendants.

---

PLEASE TAKE NOTICE: Defendants Robert and Karen Glen move the Court for the relief requested below and give notice of hearing.

1.    The Court will hold a hearing on this Motion on March 18, 2009, at 11:30 a.m., in Courtroom number 2B, 200 Warren E. Burger Federal Building and United States Courthouse, at 316 North Robert Street, St. Paul, Minnesota.

2.    Any response to this Motion must be filed and served by delivery not later than March 13, 2009, which is three days before the time set for hearing (excluding Saturdays, Sundays and legal holidays) or filed and served by mail not later than March 9, 2009, which is seven days before the time set for the hearing (excluding Saturdays, Sundays and legal holidays).

**UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED,**

**THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

3.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334, Bankruptcy Rule 5005.  This proceeding is a core proceeding pursuant to 28

U.S.C. §157 (b)(2)(I).  The Petition commencing this voluntary Chapter 7 case

was filed on June 12, 2008.  The case is now pending in this Court.

4.    This Motion is filed under Bankruptcy Rules 7056 and 9013.  Movant requests

relief with respect to summary judgment in favor of Defendants on all counts of

the Complaint.   Movant seeks an Order from this Court dismissing Plaintiffs'

Complaint with Prejudice.

5.    Attached and incorporated herein is the Movant's Memorandum of Law in

Support of Defendants' Motion for Summary Judgment.

   **WHEREFORE**, Defendants move the Court for an Order granting summary

judgment in favor of the Defendant, dismissing Plaintiffs' Complaint with Prejudice.


Dated:  February 4, 2009                    DUNLAP & SEEGER, P.A.

                                   By:    /e/ Scott J. Hoss _____
                                          Paul W. Bucher
                                          Registration No. 123237

                                          Scott J. Hoss
                                          Registration No. 336993

                                          Attorneys for Defendants
                                          206 South Broadway, Suite 505
                                          Rochester, Minnesota  55904
                                          Telephone:  (507) 288-9111

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

Robert Glen and Karen Jean Glen,

        Debtors.

Chapter 7 Bankruptcy

Bky. File No.:    08-32860-DDO
Adv. No.:    08-3156

Darrell and Judy Marcusen,

        Plaintiffs,

v.

Robert Glen and Karen Jean Glen,

        Defendants.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Defendants respectfully submit this memorandum in support of their motion for summary judgment. Plaintiffs' attempt to except their claim from Defendants' discharge is completely without merit. Plaintiffs fail to identify any facts consistent with a false representation or fraudulent intent. Defendants admit a breach of contract that ultimately led them to seek bankruptcy protection, due to their inability to pay their debts. However, the inability to fulfill a promise to pay is dischargeable, not fraudulent.

## FACTS

Defendants operated Robert Glen Enterprises as a sole proprietorship, constructing residential homes in Southeastern Minnesota. (Robert Glen Affidavit, Ex. A, pg. 11). Plaintiffs Darrell and Judy Marcusen provided funding for Robert Glen Enterprises'

1

construction of speculation homes ("Spec. Home(s)"). (Robert Glen Affidavit, Ex. A, pg.

16). Darrell Marcusen is Karen Glen's brother. (Karen Glen Affidavit ¶ 2).

**Lot 22**

Robert Glen Enterprises first Spec. home with Plaintiffs was located at 8215 – 6th

Street, Sunny Acres, Goodview, Minnesota, ("Lot 22"). (Glen Affidavit, Ex. A, ppg. 16,

17). Between March 3, 2004, and July 19, 2004, Plaintiffs provided approximately

$125,000.00 to Robert Glen Enterprises for Lot 22. (Robert Glen Affidavit, Ex. A, pg. 17

and Ex. C). On February 17, 2004, Debtors executed a promissory note for $125,000.00

in favor of Plaintiffs. (Robert Glen Affidavit, Ex. B). On February 17, 2004, Debtors

executed a residential mortgage as to Lot 22, in favor of Plaintiffs, to secure the

corresponding promissory note. (Robert Glen Affidavit, Ex. B). On February 18, 2004,

Debtors, through their attorney, provided the note and mortgage for Lot 22 to Debtors.

(Robert Glen Affidavit, Ex. B). Plaintiffs did not record the mortgage.

Upon the sale of Lot 22, Defendants repaid the principal plus a profit. (Robert

Glen Affidavit, Ex. A, pg. 19 and Ex. C). On or about August 1, 2004, Plaintiffs

deposited a check in the amount of $125,000.00 from Defendants. (Robert Glen

Affidavit, Ex. C). In addition to the $125,000.00, Defendants sent a profit check of

$14,158.17 to Plaintiffs, as their half of the profit on Lot 22. (Robert Glen Affidavit, Ex.

C and K).

**Lots 23**

The second Spec. Home the parties built was Lot 23, Block 3, Sunny Acres,

Goodview, Minnesota ("Lot 23"). (Robert Glen Affidavit, Ex. A, pg. 49). Between

April 9, 2004, and December 11, 2004, Plaintiffs provided Robert Glen Enterprises

$145,261.57 for Lot 23.  (Robert Glen Affidavit, Ex. C and Ex. D).

The accounting of Lot 23 indicates the following payments that Plaintiffs made for

invoices supplied by Robert Glen Enterprises for expenses incurred on Lot 23:

| | |
|---|---|
| 4/9/04 | $1,056.57 |
| 8/19/04 | $25,000.00 |
| 8/27/04 | $24,000.00 |
| 9/16/04 | $17,900.00 |
| 9/20/04 | $15,650.00 |
| 10/15/04 | $18,380.00 |
| 10/21/04 | $10,600.00 |
| 11/04/04 | $9,500.00 |
| 12/11/04 | $23,175.00 (A portion of the $33,175.00 paid in one check to satisfy two invoices) |

Lot 23 Total  (through 12/16/04) $145,261.57.  (Robert Glen Affidavit Ex. C and D).

On December 16, 2004, Defendants executed a promissory note for $175,000.00.

(Robert Glen Affidavit, Ex. E).  On December 16, 2004, Debtors executed a residential

mortgage securing the corresponding promissory note.  (Robert Glen Affidavit, Ex. F).

This mortgage identified Lot 23 as the mortgaged property. (Robert Glen Affidavit, Ex.

F).  The promissory note is dated September 1, 2004.  (Robert Glen Affidavit, Ex. E).

The mortgage on Lot 23 is not dated.  (Robert Glen Affidavit, Ex. F).  Plaintiffs never

recorded their mortgage on Lot 23.

On December 16, 2004, Debtors intended to pay Plaintiffs in full for the

promissory note, upon the sale of Lot 23.  (Robert Glen Affidavit, ¶ 14) (Karen Glen

3

Affidavit, ¶ 3). On December 16, 2004, Debtors intended to pay back the $175,000.00, plus a 50% share of the profit, if any. (Robert Glen Affidavit, ¶ 14) (Karen Glen Affidavit, ¶ 3). Debtors intended to treat Lot 23 as they treated Lot 22.

Plaintiffs stopped funding Lots 23 and 6[1] in early 2005. (Robert Glen Affidavit, Ex. A, pgg. 36, 37). To continue operating Robert Glen Enterprises, Defendants sought financing from a conventional lender, Winona National Bank. (Robert Glen Affidavit, Ex. A, pg. 36.) Robert Glen Enterprises used the funds from Plaintiffs and Winona National Bank to fund the construction of Spec. Homes on Lot 23 and Lot 6. (Robert Glen Affidavit Ex. A, ppg. 20, 21). Defendants gave a mortgage to Winona National Bank for Lot 23 on June 1, 2005. The bank recorded the mortgage. (Robert Glen Affidavit, Ex. G).

Due to a change in the residential housing market, Defendants struggled to sell Lot 23. Defendants attempted to sell Lot 23 for several years. Unfortunately, Lot 23 did not sell until July 27, 2007, approximately two years after completion. (Robert Glen Affidavit, Ex. H). Lot 23 sold for $176,000.00, approximately $75,000.00 less than the cost of construction, and at a loss of nearly $100,000.00. (Robert Glen Affidavit, Ex. A. ppg. 58, 59). The proceeds from the sale of Lot 23 were used to repay the note (to the extent funds were available), secured by Winona National Bank's recorded mortgage. (Robert Glen Affidavit, Ex. H). In addition, Defendants write a check for $20,000 to Defendants, which Plaintiffs deposited. (Robert Glen Affidavit, Ex. N).

---

[1] Lot 6 is also known as 8130 and 8136 Sixth Place, Goodview, Minnesota. Lot 6 was the third Spec Home the parties built.

**Lot 6**

The accounting of Lot 6 indicates the following payments that Plaintiffs made for invoices supplied by Robert Glen Enterprises for expenses incurred on Lot 6:

| | | |
|---|---|---|
| | 11/17/04 | $28,916.03 |
| | 12/11/04 | $10,000.00 |
| Lot 6 Total | (through 12/16/04) | $38,916.03 |

(Robert Glen Affidavit, Ex. C and I).

On December 16, 2004, Defendants executed a promissory note for $50,000.00. (Robert Glen Affidavit, Ex. J). On December 16, 2004, Debtors executed a residential mortgage securing the corresponding promissory note. (Robert Glen Affidavit, Ex. M). This mortgage identified Lot 6 as the mortgaged property. (Robert Glen Affidavit, Ex. M). The promissory note is dated November 1, 2004. (Robert Glen Affidavit, Ex. J). The mortgage on Lot 6 is not dated. Plaintiffs never recorded their mortgage on Lot 6.

## LEGAL ANALYSIS

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. 7056. However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth

specific facts in the record showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**1.     Defendants did not receive funds from Plaintiffs under false pretenses, false representation, or actual fraud.**

Plaintiffs' claim fails on its face.  Plaintiffs fail to identify a single false representation.  Instead, they rely on a broken promise to pay, which is simply a breach of contract.  Thus, the debt is dischargeable.  In addition, Plaintiffs could have avoided this entire dispute by simply recording their mortgage.

Plaintiffs allege the financial obligation of Defendant to Plaintiff, pursuant to the aforereferenced loans, is non-dischargeable under 11 U.S.C. Section 523(a)(2)(A).  For Plaintiff to succeed, the claim must be sustained by a preponderance of the evidence.  <u>See</u>, e.g. <u>Grogan v. Garner</u>, 111 S.Ct. 654, 112 L.Ed. 755 (1991) (preponderance of the evidence standard applies to all exceptions from dischargeability of debts contained in Section 523 (a) of the United States Bankruptcy Code, including the provision for nondischargeability on the basis of fraud.)  Furthermore, exceptions to discharge in bankruptcy are to be strictly construed.  <u>In Re Carothers</u>, 22 B.R. 114, 120 (Bkrtcy. D. Minn. 1982), citing <u>Gleason v. Thaw</u>, 236 U.S. 558, 35 S. Ct. 287, 59 L.Ed. 717 (1915).  Plaintiffs cannot sustain their burden for non-dischargeability.

Section 523 (a)(2)(A) provides:

(a)     A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

6

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

See 11 U.S.C. §523(a)(2)(A).

Under Section 523(a)(2)(A), Plaintiffs must prove:

(1) the debtor made a false representation;

(2) at the time the debtor knew the representation was false;

(3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor;

(4) the creditor justifiably relied on the representation; and

(5) the creditor sustained loss and damage as a proximate result of the representation having been made.

See In re Nelson, 357 B.R., 508, 513 (8th Cir. BAP 2006), citing Field v. Mans, 516 U.S. 59 (1995)(justifiable reliance); Grogan v. Garner, 498 U.S. 279 (1991)(burden of proof); In re Moen, 238 B.R. 785,790 (8th Cir. 1999)(elements of proof); see also In re Preece, 367 B.R. 647, 652 (8th Cir. BAP 2007), citing In re Ophaug, 827 F.2d 340 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995), In re Church, 328 B.R. 544, 547 (8th Cir. BAP 2005), In re Maurer, 256 B.R. 495, 500 (8th Cir. BAP 2000); Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95., 99 (8th Cir. BAP 2000), Guske v. Guske (In re Guske), 243 B.R. 359, 362 (8th Cir. BAP 2000).

Plaintiffs fail to meet their burden under § 523(a)(2)(A). First, there is no evidence to demonstrate the Glens made a false representation. "To qualify as a false representation or a false pretense under 11 U.S.C. § 523(a)(2)(A), the statement must

relate to a present fact or past fact." <u>See In re Colin</u>, 294 B.R. 88, 100 (Bankr. D.Minn. 2003), citing <u>Gadtke v. Bren (In re Bren)</u>, 284 B.R. 681, 690 (Bankr. D. Minn. 2002), citing <u>(Shea v. Shea (In re Shea)</u>, 221 B.R. 491, 496 (Bankr. D.Minn. 1998). "A debtor's promise related to a future action which does not purport to depict current or past fact [] cannot be defined as a false representation or a false pretense." <u>Colin</u>, 294 B.R. at 100, quoting <u>Bank of Louisiana v. Bercier (In re Bercier)</u>, 934 F. 2d 689,692 (5th Cir. 1991).

A misrepresentation is fraudulent if a defendant "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he state or implies, or (c) knows that he does not have the basis for his representation that he states or implies." <u>Colin</u>, 294 B.R. 88, 100-101, citing <u>Moen</u>, 238 B.R. at 792, citing The Restatement (Second) of Torts § 526. At the time of the loan funding, Defendants had no idea that the housing market would regress.

The promise to pay a debt in the future is not a misrepresentation merely because the debtor fails to perform. <u>See In re Church</u>, 328 B.R. 544, 547 (8th Cir. BAP 2005), citing <u>Rust v. Tellam (In re Tellam)</u>, 323 B.R. 661, 664 (Bankr. N.D. Ohio 2005); <u>Shea</u>, 221 B.R. 491, 497 (Bankr. D.Minn. 1998). There is simply no evidence that Defendants (at the time of signing the notes) intended to breach the contracts.

Defendants fully intended to repay the loans from Plaintiffs when they were made. Where a debtor had the intent to repay when the loan was made, but subsequently changed her mind and breached the contract, no "fraud" exists within the meaning or the fraud exception to discharge. <u>In Re Hulbert</u>, 150 B.R. 169 (Bkrtcy. S.D. Tex. 1993). The fraudulent intent necessary to render a debt nondischargeable must exist at the inception

8

of the debt. Matter of Fontana, 92 B.R. 559 (Bkrtcy. M.D. Ga. 1988). Moreover, to render a debt nondischargeable in bankruptcy within the meaning and purview of 11 U.S.C Section 523(a)(2)(A), there must be "actual fraud" involving moral turpitude or intentional wrong, which connotes deceit, artifice, trick or design, involving direct or active operation of the mind. In re Carothers, 22 B.R. 114, 120 (Bkrtcy. D. Minn. 1982). In re Pommerer, 10 B.R. 935 (Bkrtcy. D. Minn. 1981).

The only actual fraud referenced in Plaintiffs' Complaint is the execution of two promissory notes. Paragraph 15 of Plaintiffs' Complaint states:

> The Debtors committed actual fraud when executing the Promissory Notes dated September 1, 2004, and November 1, 2004 in that despite the fact that the agreement required repayment of the Promissory Notes upon the sale of the Property, the Debtors only intended the repay the Promissory Notes if the Property was sold at a profit as determined by Debtors.

This alleged fact is refuted by the existence of a mortgages executed in conjunction with the notes on Lot 23 and Lot 6. (Robert Glen Affidavit, Ex. F). If Plaintiffs intended to defraud Plaintiffs, despite paying them in full for the prior house, would they also grant a mortgage for the entire debt? Plaintiffs' allegation of intent is simply illogical given the grant of a mortgage to secure the debt.

Plaintiffs' reliance on a post-funding writing to prove fraud is misplaced. The purported misrepresentation occurred after Plaintiffs funded the majority of the $175,000 loan. Defendants executed the loan for Lot 23 on December 16, 2004. $145,261.57 of the loan had already been funded at that time. (Robert Glen Affidavit, Ex. C). The universe of possible material facts relating to the alleged fraud on Lot 23 occurred on or

9

before December 16, 2004.  Plaintiff offers no facts or representations other than the

December 16, 2004 note itself.

Likewise, the universe of potential material facts relating to the Lot 6 note

includes those that occurred on or before December 16, 2004.  Plaintiffs fail to identify

any such facts.  Plaintiffs funded $38,916.03 before the note on Lot 6 was executed.  The

remaining payments, funded after December 16, 2004, could have been secured by the

respective mortgages, had Plaintiffs filed them.

There is no proof Defendants intended to deceive Plaintiffs.  There is proof

Defendants gave Plaintiffs mortgages, allowing Plaintiffs to secure most, if not all, of

their investment.  Plaintiffs' fraud claim is negated by the grant of a mortgage.  Plaintiffs'

insistence that Defendants defrauded them is contradicted by the grant of a mortgage in

Lot 23.  Plaintiffs had the right and opportunity to simply record their mortgage and

secure the payment and their position relative to subsequent notes and mortgages.

Plaintiff cannot prevail on the alleged "silence and/or omissions" as alleged.  The

final, potential fraud claim that Defendants garnered in Plaintiffs' Complaint is the

alleged inducement of Plaintiffs through Defendants' silence.  It seems Plaintiffs argue

that the absence of any representation supports their claim of fraud.  This not a case

where there is a known defect that Defendants attempted to conceal through silence.  This

is a simple contract case, where regrettably, Defendants were unable to repay debts to

Plaintiffs.

Based on the absence of a false representation, analysis of the remaining elements

in unnecessary.

**2.    Plaintiffs have no evidence of a false writing as needed to prevail under 11 U.S.C. § 523 (a)(2)(B).**

Plaintiffs fail to identify any document that is materially false, regarding Defendants' financial condition.  Instead, Plaintiffs rely on a written promise to pay.  This claim simply fails.

A successful claim under §523(a)(2)(B) requires proof of intent to deceive. Fraud under 11 U.S.C. § 523(a)(2)(B) "encompasses such fraud as involves moral turpitude or intentional fraud; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient." In re Tashman, 21 B.R. 738, 741 (Bkrtcy.D.Vt.1982). Bankruptcy fraud requires the intent to deceive. Schwartz v. Renville Farmers Co-op Credit Union, 44 B.R. 266, 269 (D. Minn. 1984).

11 U.S.C. §523(a)(2)(B) states:

> (a)    A discharge . . . does not discharge an individual debtor from any debt--
> * * *
> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
> * * *
> (B)    use of a statement in writing—
>
> > (i)    that is materially false;
> > (ii)    respecting the debtor's or an insider's financial condition;
> > (iii)    on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv)    that the debtor caused to be made or published with intent to deceive;

First, Plaintiffs must identify a statement in writing.  The only potential writings Plaintiffs identify in their Complaint are; September 1, 2004 Promissory Note for

$175,000.00, September 2004, mortgage, securing Lot 23, November, 2004 Promissory

Note for $50,000.00 and November, 2004, mortgage securing Lot 6.  (Robert Glen

Affidavit E, F, J, and M).

Next, Plaintiffs must identify something "materially false" in the writing.

Although it is not clear what information Plaintiffs claim is materially false, the only

reference to a false statement in the writings (in the Promissory Notes) is the language,

"Principal and interest shall be paid when the property is sold, upon which date the entire

balance then remaining unpaid shall be paid in full."  (Robert Glen Affidavit Ex. E and

J).  This language appears in both Promissory notes.  (Robert Glen Affidavit, Ex. E).

This is not a statement of fact.  Instead, it is a mandatory contract term.  It mandates

repayment of the note upon the sale of property, not the current status of an ascertainable

truth.

Second, the written falsehood must represent Defendants' financial condition.

There is nothing in any writing that concerns Defendants' financial condition.

Third, where there is no representation, there can be no reliance.  It appears

Plaintiffs seek relief from this Court for their reliance on Defendants' promise to pay.

Such a request is appropriate in a breach of contract action, but not in fraud.

Finally, Plaintiffs claim Defendants deceived them by memorializing their intent

to repay the note.  It is unclear how Plaintiffs reconcile the requisite intent to deceive

with the simultaneous execution of a mortgage securing the note.

## CONCLUSION

Accordingly, for the reasons stated, Defendants respectfully requests the Court

enter its Order for summary judgment in favor of the Defendants on all Claims.


Dated: February 4, 2009                          DUNLAP & SEEGER, P.A.

                                        By:   /e/ Scott J. Hoss
                                              Paul W. Bucher
                                              Registration No. 123237

                                              Scott J. Hoss
                                              Registration No. 336993

                                              Attorneys for Defendants
                                              206 South Broadway, Suite 505
                                              Rochester, Minnesota  55904
                                              Telephone:  (507) 288-9111

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In Re:                              Chapter 7 Bankruptcy

Robert Glen and Karen Jean Glen,
                                    Bky. File No.:      08-32860-DDO
            Debtors.                Adv. No.:           08-3156

---

Darrell and Judy Marcusen,

            Plaintiffs,                         **AFFIDAVIT OF**
                                                **ROBERT GLEN**

v.

Robert Glen and Karen Jean Glen,

            Defendants.

---

Robert Glen, being duly sworn under oath deposes and states as follows:

1.    Attached hereto as Exhibit A is a true and correct copy of the deposition of Robert
      Glen from September 29, 2008.

2.    Attached hereto as Exhibit B is a true and correct copy of a letter dated February
      18, 2004, from Attorney David B. Kuehner to Plaintiffs Darrell B. and Judy L.
      Marcusen.  The letter includes enclosures including a promissory note dated
      February 17, 2004, and a corresponding mortgage dated February 17, 2004.

3.    Attached hereto as Exhibit C is a true and correct copy of a document titled
      Marcuson [sic] to Glen Loan Draw Summary.

4.    Attached hereto as Exhibit D are true and correct copies of invoices from Robert
      Glen to Plaintiffs, numbered 980244, 980252, 980253, 980254, 980255, 980256,
      980257, 980258, and 9802563.

5.    Attached hereto as Exhibit E is a true and correct copy of a promissory note dated
      September 1, 2004.

6.   Attached hereto as Exhibit F is a true and correct copy of a residential mortgage, relating to Lot 23, executed on December 16, 2004.

7.   Attached hereto as Exhibit G is a true and correct copy of a mortgage dated June 1, 2005, and recorded and June 3, 2005.

8.   Attached hereto as Exhibit H is a true and correct copy of the settlement statement for the sale of real property 8235 – 6th Place, Minnesota City/Goodview, Minnesota, also known as Lot 23.

9.   Attached hereto as Exhibit I are true and correct copies of invoices for Lot 6, also known as 8136 – 6th Place, numbered 980262 and 980261.

10.  Attached hereto as Exhibit J is a true and correct copy of a promissory note dated November 1, 2004.

11.  Attached here as Exhibit K is a true and correct copy of a 1099 to Darrell Marcusen for $14,158.15. This represents a 50% profit from the sale of Lot 22.

12.  Attached hereto as Exhibit M is a true and correct of a residential mortgage on Lot 6, executed on December 16, 2004.

13.  Attached hereto as Exhibit N is a true and correct copy of an account statement showing Plaintiffs' deposit of $20,000.00 from the proceeds of the loan from Winona National Bank. The deposit of $20,542.04 includes a standard payment on the line of credit for $542.04.

14.  At all times, including on or about December 16, 2004, my wife and I always intended to pay Plaintiffs in full for the promissory notes relating to Lot 23 (Lot 23, Block 3, Sunny Acres, Goodview, Minnesota ) and Lot 6 (Lot 6, Block 3, Goodview, Minnesota). In addition, my wife and I intended to pay a 50% share of any profit realized as a result of the construction and sale of Lot 23 and Lot 6.

15.  But for the downturn in the residential real estate market, in Southeastern Minnesota, my wife and I would have repaid the Marcusens.

16.  In or about the spring of 2005, the Marcusens ceased their funding on Lot 23 and Lot 6. Due to a lack of funding, my wife and I sought capital from Winona National Bank.

17.  Robert Glen Enterprises put Lot 23 on the market in 2004. We hoped to sell Lot 23 for approximately $250,000.00. Lot 23 did not sell for over two years.

18.   Lot 23 eventually sold in 2007, for $176,000.00.

Dated: _2/4/_____, 2009

_____
Robert Glen

Subscribed and sworn to before me
this 4th day of February, 2009.

_____
Notary Public

ALISON GONZALEZ
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2012

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                   Chapter 7 Bankruptcy

Robert Glen and Karen Jean Glen,
                                         Bky. File No.:      08-32860-DDO
          Debtors.                       Adv. No.:           08-3156

---

Darrell and Judy Marcusen,

          Plaintiffs,                           **AFFIDAVIT OF**
                                                **KAREN J. GLEN**
v.

Robert Glen and Karen Jean Glen,

          Defendants.

---

Karen Glen, being duly sworn under oath deposes and states as follows:

1.   Attached hereto as exhibit L is a true and correct of my deposition transcript taken
     on September 29, 2008.

2.   Darrell Marcusen is my brother.

3.   At all times, including on or about December 16, 2004, my husband and I always
     intended to pay Plaintiffs in full for the promissory notes relating to Lot 23 (Lot 23,
     Block 3, Sunny Acres, Goodview, Minnesota ) and Lot 6 (Lot 6, Block 3,
     Goodview, Minnesota) . In addition, my husband and I agreed to pay a 50% share
     of any profit realized as a result of the construction and sale of Lot 23 and Lot 6.

4.   But for the downturn in the residential real estate market, in Southeastern
     Minnesota, we would have repaid the Marcusens.

5.   In or about the spring of 2005, the Marcusens ceased their funding on Lot 23 and
     Lot 6. Due to a lack of funding, we sought capital from Winona National Bank.

6.   Robert Glen Enterprises put Lot 23 on the market in 2004. We hoped to sell Lot 23
     for approximately $250,000.00. Lot 23 did not sell for over two years.

7.    Lot 23 eventually sold in 2007, for $176,000.00.


Dated: _2 - 4_____, 2009

_____
Karen J. Glen

Subscribed and sworn to before me
this 4th day of February, 2009.

_____
Notary Public

ALISON GONZALEZ
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2012

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In Re:                              Chapter 7 Bankruptcy

Robert Glen and Karen Jean Glen,
                                    Bky. File No.:     08-32860-DDO
            Debtors.                Adv. No.:          08-3156

_____

Darrell and Judy Marcusen,

            Plaintiffs,                           **ORDER**
v.

Robert Glen and Karen Jean Glen,

            Defendants.

_____

At Minneapolis, Minnesota.

        This matter came before the undersigned upon Defendants' Motion for Summary

Judgment.  Appearances were noted on the record.  Based on all the pleadings and

proceedings in this case and the arguments of counsel, and the Court finding that there is

no genuine issue of material fact and Defendants are entitled to Judgment as a matter of

law it is hereby

        **ORDERED**:

1.      The Defendants motion for summary judgment is granted.

2.      Plaintiffs' Complaint is dismissed with prejudice.


Dated: _____, 2009

                                    _____
                                    Dennis D. O'Brien
                                    United States Bankruptcy Judge